## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | **Chapter 7** |
| **DEBORAH R. MALLOY,** | : | |
| | : | |
| Debtor. | : | **Bky. No. 14-17727 ELF** |
| ———————————————— | : | |
| **J & V DEVELOPERS, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **Adv. No. 14-687** |
| **DEBORAH R. MALLOY,** | : | |
| | : | |
| **Defendant,** | : | |
| | : | |

# M E M O R A N D U M

## I. INTRODUCTION

On July 13, 2013, prior to the commencement of this chapter 7 bankruptcy case, Plaintiff

J&V Developers Inc. ("J&V") obtained a pre-petition state court judgment in the Court of

Common Pleas,  Delaware County ("the C.P. Court") against Debtor Deborah R. Malloy ("the

Debtor"), for attorney's fees and costs, in the amount of $63,486.05 ("the Fee Award").  The C.P.

Court entered the Fee Award pursuant to 42 Pa. C.S.A. §2503(7) as a sanction against the Debtor

and her counsel, jointly and severally, for their conduct during the pendency of the state court

litigation between the parties.  The C.P. Court supported the Fee Award in a lengthy opinion

("the C.P. Opinion") that set forth the court's factual findings and legal conclusions.

The Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code in this court

on September 25, 2014.  On December 19, 2014, J&V filed a complaint, initiating this adversary

proceeding, seeking a determination that the Fee Award is nondischargeable under 11 U.S.C.

§523(a)(6).  The Debtor filed an answer to the complaint on January 21, 2015.

Before me are the parties' cross motions for summary judgment.[1]

Pursuant to the doctrine of collateral estoppel (also known as "issue preclusion"),[2] I

conclude that the Debtor is precluded from relitigating the state court's factual findings and legal

conclusions.  Based on those findings and conclusions, J&V has satisfied its burden of proof on

summary judgment.

Accordingly, J&V's motion for summary judgment will be granted, the Debtor's motion

for summary judgment will be denied and an order will be entered determining that the Fee

Award debt is nondischargeable under 11 U.S.C. §523(a)(6).[3]

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Underlying Transaction

J&V is the developer of a planned community known as Spring Valley Estates located in

---

[1]     The Debtor filed the initial summary judgment motion on March 23, 2015 and J&V filed its cross motion on April 20, 2015.  The last brief in the matter was filed on May 4, 2015.

[2]     I will employ the terms interchangeably in this Memorandum.

[3]     On February 3, 2015, after filing her answer to the complaint, the Debtor filed a third party complaint against "Dom Bucci and/or Century 21 Crest Real Estate, Ltd."  (Doc. # 23).  In the third party complaint, the Debtor alleged that the third party defendants "are or may be liable to her for all or a part of J & V Developers' claim against her."  On April 17, 2015, the Debtor voluntarily dismissed the third party complaint without prejudice pursuant to Fed. R. Bankr. P. 7041.  (Doc. # 35).

Aston, Pennsylvania.  (See J&V Developers v. Hargy, 87 A.3d 890 (Pa. Super. Ct. Oct. 24, 2013)

(Table) ("Pa. Super. Ct. I")).[4]  On March 22, 2007, the Debtor entered into an Agreement of Sale

("the AOS") with J&V for the purchase of a home, at which time the Debtor tendered a deposit

check in the amount of $10,000.00 to be placed in an escrow account.  (See J&V Developers,

Inc. v. Hargy, 99 Del. Cty. Rep. 347, 354 (C.P. Dela. 2012) ("C.P. Opinion") (attached as Ex. 1

to Compl.)).[5]  (Id. at 354).  The AOS provided that the purchase price of the property was

$289,900.00 and was to be paid in full at settlement, to occur on or before June 30, 2007.  (Id.;

Pa. Super. Ct. I at 5-6).

The settlement date was extended by one (1) month to August 1, 2007 because the

construction of the home was not complete on June 30, 2007.  (See C.P. Opinion at 354).  During

this time, "Extras" and carpeting were installed.  (Id.).  Notice of settlement was sent to the

Debtor several days before August 1, 2007, although not exactly ten (10) days as contemplated

---

[4]      The Superior Court opinion is nonprecedential and unpublished.  The Superior Court
internal operating procedures provide:

> An unpublished memorandum decision shall not be relied upon or cited by a
> Court or a party in any other action or proceeding, except that such a
> memorandum decision may be relied upon or cited (1) when it is relevant under
> the doctrine of law of the case, res judicata, or collateral estoppel, and (2) when
> the memorandum is relevant to a criminal action or proceeding because it recites
> issues raised and reasons for a decision affecting the same defendant in a prior
> action or proceeding. When an unpublished memorandum is relied upon
> pursuant to this rule, a copy of the memorandum must be furnished to the other
> party and to the Court.

Pa. Super. Ct. IOP § 65.37.  The Plaintiff attached the opinion to the Complaint as Ex. 2.

[5]      The C.P. Opinion is published in a local county reporter.  However, it is not reported on
either Westlaw or LEXIS.  I will cite to the pages of the local county reporter.

by the AOS.[6]  (Id.).  A pre-inspection of the property took place on July 27, 2007, at which time,

the Debtor's counsel, Edward Charles Malloy III (whom she subsequently married) ("Mr.

Malloy") appeared and entered the dwelling, while she stood outside.  (Id. at 358).

 The Debtor did not appear at the August 1, 2007 closing.[7]  (Id. at 354).  By letter faxed to

the Debtor on September 6, 2007, J&V offered to return the Debtor's $10,000.00 deposit in

exchange for a release.  (Id. at 357).  On September 7, 2007, the Debtor "counter offered" with a

demand for legal interest on the escrowed deposit money, plus reimbursement of the $1,414.00

she spent on carpeting.  J&V did not accept this "counter offer."  and, on September 12, 2007,

responded to the counter offer by sending the Debtor a notice that she was in breach of the AOS

for failing to close on the sale.  (Id. at 357-78).  J&V asserted that the AOS mortgage continency

clause was inapplicable and that the Debtor had no right to cancel the AOS because she failed to

timely submit a proof of mortgage application.  (Id.).[8]

---

[6] According to the AOS, if the property was not ready for occupancy at the end of June
2007, settlement would take place on ten (10) days notice.  (Pa. Super. Ct. I at 6).

[7] Despite attending the pre-settlement inspection of the property on July 27, 2007, the
Debtor contended that J&V Developers' notice to attend the August 1, 2007 Settlement was invalid
because it did not strictly conform to the ten (10) day period set forth in the AOS.

[8] Section Four of the AOS entitled "Mortgage Application," required the Debtor to apply
for a mortgage loan to purchase the property in the amount of $231,920.00 for a term of 30 years at an
interest rate of 6% not to exceed 7% within ten days from March 22, 2007, the date of the AOS, and to
notify J&V promptly of the name and address of the lender to whom she made the application.  (See C.P.
Opinion at 355).

### B.  The Initial C.P. Litigation and the First Appeal

On May 8, 2008, J&V filed a complaint against the Debtor in the Court of Common Pleas of Delaware County in Pennsylvania. ("the C.P. Litigation").[9]  In the complaint, J&V sought to retain the $10,000.00 in escrowed deposit money.  (Id. at 352).  The Debtor filed a counterclaim, asserting that Mr. Malloy was entitled to an "under the table" commission of $7,200.00 (to be awarded to him directly) for "bringing the 'deal' together."  (Id.).

A six (6) day trial took place over the course of an eight (8) month period from July 19, 2010 through March 8, 2011.[10]  On March 15, 2011, the court entered its decision in favor of J&V.  The court found that the Debtor breached the AOS and ordered that her $10,000.00 escrowed deposit on the purchase price of the property be turned over to J&V with 6% legal interest from the time of the breach (August 2, 2007).  (Id. at 350 n.1).  The court also determined that J&V was entitled to retain the nearly $10,000.00 worth of improvements added to the subject premises at the Debtor's request, as well as the $1,414.00 worth of carpeting (i.e., the "extras" mentioned earlier).  (Id.).

The Debtor failed to timely submit a post-trial motion pursuant to Pa. R. Civ .P.

---

[9]      The case initially went to compulsory arbitration and resulted in an award in favor of J&V on all counts on February 23, 2009.  The Debtor appealed to the Court of Common Pleas.  J&V offered to return the $10,000.00 deposit to the Debtor, but she refused because she also wanted J&V to reimburse her the $1,414.00 for the carpet upgrade.  The $10,000.00 was placed in escrow.  (See Pa. Super. Ct. I at 13).

[10]     The trial judge described the experience of the trial as "almost like Alice in Wonderland."  (See 99 Del. Cty. Rep. at 350 n.1).

227.1(c)(2).[11]  (Id. at 350 & n.1).  The court entered judgment in favor of J&V on April 13, 2011.

(See Pa. Super. Ct. I at 14).

The Debtor filed an appeal to the Superior Court of Pennsylvania on April 14, 2011.

(Id.).  The Superior Court dismissed the appeal on May 23, 2011 on J&V's motion to dismiss for

the Debtor's failure to comply with Pa. R. C.P. 227(c)(2).  (Id.).


### C. J&V's Petition for Assessment of Attorney's Fees

After the Debtor failed to file post-trial motions in the C.P. Court, J&V filed a "Petition

for Assessment of Attorney Fees" ("the Fee Petition") pursuant to 42 Pa. C.S.A. §2503(7)  for

the dilatory, obdurate, vexatious and bad faith conduct on the part of both the Debtor and Mr.

Malloy during the pendency of the C.P. Litigation.  (See C.P. Opinion at 350).  The C.P. Court

held a hearing on the Fee Petition on March 26, 2012.

On July 13, 2013,, the C.P. Court[12] issued the C.P. Opinion and granted the Fee Petition,

awarding J&V $63,486.05 (i.e., the Fee Award that is the subject of this adversary proceeding).

(Id.).

---

[11]        Pa. R. C.P. 227.1(c)(2) provides as follows:

> Rule 227.1 Post-Trial Relief
>
> > (c)  Post-trial motions shall be filed within ten days after
> >
> > . . .
> >
> > (2) notice of nonsuit or the filing of the decision in the case of a
> > trial without a jury.

[12]        The initial litigation that resulted in the entry of the 2011 Judgment was heard by Judge
Kenney.  The Fee Petition was heard by Judge Burr.

## III.  LEGAL STANDARDS

### A.  Summary Judgment Under Rule 56

A moving party is entitled to summary judgment by demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (incorporated in this adversary proceeding by Fed. R. Bankr. P. 7056); see, e.g., Liberty Lincoln–Mercury, Inc. v. Ford Motor Co., 676 F.3d 318, 323 (3d Cir. 2012).

Under Rule 56, the moving party is entitled to judgment as a matter of law if the court finds that the motion alleges (and supports with evidence) facts which, if proven at trial, would require a directed verdict in the movant's favor. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). "[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." United States v. Donovan, 661 F.3d 174, 185 (3d Cir. 2011) (quoting El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007)).  If the moving party meets its initial burden, the responding party may not rest on the pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material which demonstrate a genuine issue of material fact to be resolved at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–50 (1986).

The court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial. Anderson, 477 U.S. at 249.  A genuine issue of material fact is one in which the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. Id. at 248.  The court must view the underlying facts and make

all reasonable inferences therefrom in the light most favorable to the party opposing the motion.

Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); United States v. 717 South

Woodward St., 2 F.3d 529, 533 (3d Cir. 1993).  Thus, if it appears that the evidence "is so

one-sided that one party must prevail as a matter of law," the court shall enter judgment

accordingly in that party's favor.  Anderson, 477 U.S. at 252.

A party's burden of proof plays an essential role in determining the merits of a summary

judgment motion.

Where the movant is the plaintiff who has the burden of proof at trial, the movant must

show that no reasonable jury could find for the non-moving party.  Fitzpatrick, 2 F.3d at 1115.

The movant "must produce enough evidence to justify a directed verdict in its favor in order to

meet its initial burden."  Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579,

1582 n.2 (3d Cir. 1992); see also In re Newman, 304 B.R. 188, 193 (Bankr. E.D. Pa. 2002).

Thus, in order to prevail on its motion, J&V must demonstrate that each element of its

claim under §523(a) has been proven and that the Debtor has not come forward with rebuttal

evidence to create a triable factual dispute as to at least one (1) element of the plaintiff's claim.

Conversely, as the moving party without the burden of proof at trial, the Debtor may establish

she is entitled to judgment either by demonstrating that the undisputed facts negate an element of

the plaintiff's claim or that the plaintiff lacks evidence to support an essential element of its

claim.  In re Polichuk, 506 B.R. 405, 422 (Bankr. E.D. Pa. 2014) (citing Orson, Inc. v. Miramax

Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996) and Quaker State Minit-Lube, Inc. v. Fireman's

Fund Ins. Co., 868 F. Supp. 1278, 1287 n.5 (D. Utah 1994)).

8

## B.  11 U.S.C. §523(a)(6)

One of the Bankruptcy Code's central purposes is to permit honest debtors to reorder their financial affairs and obtain a "fresh start," unburdened by the weight of preexisting debt. See In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995); In re Marques, 358 B.R. 188, 193 (Bankr. E.D. Pa. 2006).  Accordingly, exceptions to discharge are construed strictly against creditors and liberally in favor of debtors.  Cohn, 54 F.3d at 1113; In re Bell, 498 B.R. 463, 476-77 (Bankr. E.D. Pa. 2013) In re Glunk, 455 B.R. 399, 415 (Bankr. E.D. Pa. 2011).

A creditor objecting to the dischargeability of a debt bears the burden of proof.  Cohn, 54 F.3d at 1113; In re Stamou, 2009 WL 1025161, *3 (Bankr. D.N.J. Mar. 19, 2009); In re Marcet, 352 B.R. 462, 468 (Bankr. N.D. Ill. 2006).  The creditor must establish the elements under §523(a) by a preponderance of the evidence.  See Grogan v. Garner, 498 U.S. 279, 291 (1991); In re August, 448 B.R. 331, 357 (Bankr. E.D. Pa. 2011) (citations omitted).

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity."  Aside from an injury to an entity or its property, section 523(a)(6) has two (2) primary requirements, i.e., the debtor's conduct must be both "willful" and "malicious."

A willful injury is an injury that is done deliberately or intentionally.  In re Coley, 433 B.R. 476, 497 (Bankr. E.D. Pa. 2010) (citing Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)). Case law in the Third Circuit instructs that deliberate "actions taken for the specific purpose of causing an injury as well as actions that have a substantial certainty of producing injury are 'willful' within the meaning of § 523(a)(6)." Coley, 433 B.R. at 497 (citing In re Conte, 33 F.3d 303, 307–09 (3d Cir. 1994)).

9

"Malice does not mean the same thing for nondischargeability purposes under § 523(a)(6) as it does in contexts outside of bankruptcy." In re Wooten, 423 B.R. 108, 130 (Bankr. E.D. Va. 2010) (citation omitted); accord Conte, 33 F.3d at 308.  "In bankruptcy, a debtor may act with malice without bearing any subjective ill will toward plaintiff creditor or any specific intent to injure same." Wooten, 423 B.R. at 130 (citation omitted); see also In re Vidal, 2012 WL 3907847, at *28 (Bankr. E.D. Pa. Sept. 7, 2012).  Rather, malice encompasses an injury that is "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." In re Jacobs, 381 B.R. 128, 136, 138–39 (Bankr. E.D. Pa. 2008) (quoting 4 Collier on Bankruptcy ¶ 523.12[2] (15th rev. ed. 2007)).  Malice may be established by the debtor's actions as well as the surrounding circumstances. Jacobs, 381 B.R. at 137; accord St. Paul Fire & Marine Ins. Co. v. Vaughn, 779 F.2d 1003, 1010 (4th Cir. 1985) ("Implied malice, which may be shown by the acts and conduct of the debtor in the context of their surrounding circumstances, is sufficient under 11 U.S.C. § 523(a)(6)").

## C.  Collateral Estoppel/ Issue Preclusion

### 1.

"Issue preclusion is based upon the policy that 'a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.'" Dici v. Commw. of Pa., 91 F.3d 542, 547 (3d Cir. 1996) (quoting Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991)).  Generally, the doctrine is applicable in bankruptcy proceedings involving the determination of the dischargeability of a debt. Grogan, 498 U.S. at 285.

10

The application of issue preclusion based on a prior state court judgment is grounded in the federal full faith and credit statute, 28 U.S.C. §1738, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." Accord Marrese v. Amer. Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985).  Thus, in this proceeding, the state court's findings are entitled to the same preclusive effect in this court as they would receive in the courts of Pennsylvania.

Under Pennsylvania law, collateral estoppel applies when:

(1)    an issue is identical to one that was presented in a prior case;

(2)    there has been a final judgment on the merits of the issue in the prior case;

(3)    the party against whom the doctrine is asserted was a party in, or in privity with a party in, the prior action;

(4)    the party against whom the doctrine is asserted, or one in privity with the party, had a full and fair opportunity to litigate the issue in the prior proceeding; and

(5)    the determination in the prior proceeding was essential to the judgment.

E.g., Cohen v. Workers' Comp. Appeal Bd. (City of Philadelphia), 909 A.2d 1261, 1264 (Pa. 2006); In re Randall, 358 B.R. 145, 164 (Bankr. E.D. Pa. 2006).

**2.**

In In re Kates, 485 B.R. 86, 102-03 (Bankr. E.D. Pa. 2012), I described two (2) methodologies a bankruptcy court may employ when evaluating the applicability of issue preclusion in a nondischargeability proceeding, labeling them as a "deductive" approach and an "inductive" approach:

11

The first methodology, most commonly employed in cases in which the first court made no specific findings (such as a trial that culminated in a jury verdict), might be described as a "**deductive" approach**. In this approach, the bankruptcy court starts with the ultimate conclusions of the first court (which usually are not in dispute)—for example, that the court entered judgment in the creditor's favor on a particular cause of action. The court next attempts to reconstruct inferentially the necessary foundations of the prior decision. If that reconstruction process is successful, the court then compares those foundational elements of the prior court ruling to the statutory elements of the § 523(a) nondischargeability asserted by the plaintiff. This reasoning process may involve a purely legal analysis, e.g., a comparison of the necessary elements of the claim litigated in the first proceeding with the elements of the bankruptcy nondischargeability claim. Or, the bankruptcy court may consider additional materials from the first proceeding, such as pleadings, briefs and jury instructions, in an effort to ascertain what issues were actually litigated before and necessarily decided by the prior court (and, if the issues were mixed fact-law questions, the legal standard employed by the court). If the court is able to determine that particular issues were actually and necessarily litigated in the prior proceeding—be they fact issues or mixed fact-law issues—and concludes that they are identical to the issues in the bankruptcy proceeding, then relitigation of those issues will be precluded.

A second methodology, usually employed when the prior tribunal made express findings of fact and conclusions of law, distinct from the process described above, involves what might be characterized as an "**inductive**" rather than a "deductive" **approach**. By dropping down one level and focusing on the specific findings (particularly, findings of historical fact) in the prior proceeding that are entitled to preclusive effect, under the inductive approach, the court evaluates whether the preclusive facts, considered in the aggregate, establish any or all of the elements of a § 523(a) claim.

Under either analysis, the court must always consider whether the burdens of proof or the substantive legal standards in the bankruptcy proceeding differ from those of the prior proceeding, who prevailed in the earlier matter and which party in the bankruptcy proceeding seeks to invoke the issue preclusion doctrine.

(emphasis added) (footnotes omitted).

With these principles in mind, I consider the motions for summary judgment, and in particular, J&V's summary judgment argument – that the Debtor is precluded from relitigating the findings in the C.P. Opinion, that those findings establish that there are no disputed issues of

fact and that J&V is entitled to a determination of nondischargeability under 11 U.S.C.

§523(a)(6) as a matter of law.[13]


## IV. J&V'S MOTION FOR SUMMARY JUDGMENT

### A. The Sole Collateral Estoppel Issue: Identity of the Issues

In order to establish that the Fee Award is nondischargeable under 11 U.S.C. §523(a)(6),

J&V must prove that the Debtor's conduct was willful and malicious.  J&V seeks to do so by

invoking collateral estoppel and relying upon the C.P. Court findings and conclusions.

For issue preclusion to apply, the issue decided in the prior action must be identical to the

issue that is before the subsequent court (and not that the causes of action are the same, see In re

Weidner, 476 B.R. 873, 885 (Bankr. E.D. Pa. 2012)). The Debtor's opposition focuses on the

first requirement of issue preclusion:  she opposes the application of issue preclusion on the

ground that the issues under 42 Pa.C.S. §2503 and 11 U.S.C. §523(a)(6) are not identical.[14]

---

[13]      No extended discussion of the Debtor's motion is necessary.  The Debtor completely
missed the mark.  The Debtor did nothing more than attack the merits of the underlying C.P. Judgment,
claiming that the trial court reached the wrong conclusion regarding the Debtor's breach of the AOS, an
issue that is not before this court.   The Debtor simply failed addressed the issue that is before this court:
the dischargeability of the Fee Award under §523(a)(6).  For this reason, (as well as the fact that J&V's
motion is meritorious),the Debtor's Motion will be denied.


[14]      The Debtor makes a feeble attempt to contest the requirement that parties to both actions
be the same or at least in privity.  The Debtor contends that the previously litigated issues focused her
counsel's "incompetence" and she cannot be denied a discharge based upon the actions of another.

          I reject this argument out of hand.  The Debtor has ignored the fact that the Fee Award
was entered as a sanction against her, as well as  her trial counsel, jointly and severally.  She was held
liable for actions that she herself took during the course of the litigation.

## A.  The Deductive Approach

## 1.

The C.P. Court granted the Fee Award pursuant to 42 Pa. C.S.A. §2503.  Section 2503

provides for reasonable counsel fees to be taxed as costs as provided in the statute if the matter

falls within any one (1) of ten (10) statutory subsections.[15]  The C.P. Court invoked only one (1)

subsection – §2503(7), which provides for "counsel fees as a sanction against another

participant for dilatory, obdurate or vexatious conduct during the pendency of a matter."

The phrase "dilatory, obdurate or vexatious" in §2503(7) is in the disjunctive and a court

need only find the conduct satisfies one (1) of those standards in order to grant relief.  See

Thunberg v. Strause, 682 A.2d 295, 301 n.7 (Pa. 1996) (construing similar phrase under

§2503(9)).

The C.P. Court did not ground its ruling on any one specific term in the phrase.

However, on nine (9) occasions in its opinion, the C.P. Court referred to the Debtor's actions (as

well her counsel's conduct)[16] as dilatory, obdurate **and** vexatious.  99 Del. Cty. Rep. at 352 n.3,

---

[15]     42 Pa. C.S. 2503 provides, in pertinent part:

>     The following participants shall be entitled to a reasonable counsel fee as part of
>     the taxable costs of the matter:
>
>         (7)     Any participant who is awarded counsel fees as a sanction
>                 against another participant for dilatory, obdurate or vexatious
>                 conduct during the pendency of a matter.

[16]     A court may issue a sanction under 42 Pa. C.S. §2503 against a party and his or her
counsel jointly and severally if the conduct of the attorney is found to be within the ambit of the statute.
In re Liscio, 638 A.2d 1019, 1022-23 (Pa. Super. Ct. 1994).

14

363, 370, 374, 375, 376, 378.[17]  Thus, the C.P. Court found that all three (3) elements of the

§2503(7) disjunctive standard were established.

In light of the C.P. Court's multiple findings under §2503(7), under the deductive

approach to issue preclusion, the question is whether at least one of the terms in §2503(7)  –

"dilatory," "obdurate" or "vexatious"  –  requires proof of the same as the elements as "willful

and malicious" injury under §523(a)(6).  Rephrased in collateral estoppel terms, the question is:

do any one (1) of the (3) grounds for relief under §2503(7) involve the "same issue" as a

determination of "willfulness and "maliciousness" under 11 U.S.C. §523(a)(6)?  If so, the Debtor

is precluded from relitigating whether the Fee Award is for willful and malicious injury within

the meaning of 11 U.S.C. §523(a)(6).[18]

---

[17]    On ten (10) occasions, the court also described the Debtor's conduct as "bad faith," sometimes in the same sentence as its finding that the Debtor's conduct was "vexatious," sometimes employing the term "bad faith" independently.  (See 99 Del. Cty. Rep. at 352 n.3, 356 n.7, 358, 359 n.8, 360 n.9, 363, 370, 374, 376, 378).

> The following passage captures the essence and spirit of the C.P. Court's findings regarding the Debtor's conduct:
>
> > [This opinion] thoroughly demonstrates that the record of this litigation is replete with instances of vexatious, obdurate, and dilatory conduct from the [Debtor] and Mr. Malloy as well as being surrounded and tinged through with their bad faith, corruption and fraud.

(Id. at 374).


[18]    The fifth required element for collateral estoppel to apply is that the prior court's determination was essential to its decision.  See Part III.C., supra.  The Debtor has not specifically disputed the existence of this element.  Nevertheless, in the circumstances presented  –  where the C.P. Court made three (3) findings with respect to a statute in which any one (1) of those findings would be sufficient  –  I find it appropriate to consider the question.

The mere fact that the C.P. Court based its decision on all three (3) standards in 42 Pa. C.S.

(continued...)

15

**2.**

Pennsylvania courts consider conduct "dilatory" under 42 Pa. C.S. §2503(7) "where the record demonstrates that counsel displayed a lack of diligence that delayed proceedings unnecessarily and caused additional legal work." In re Estate of Burger, 852 A.2d 385, 391 (Pa. Super. Ct. 2004). The term also includes conduct that "is intended to cause delay or to gain time or to put off a decision." Elfman v. Berman, 2001 WL 1807940, at *12 (Pa. Com. Pl. Aug. 30, 2001).

Obdurate conduct has been found when the party is "stubbornly persistent in wrongdoing." Id. (citation omitted).

The Pennsylvania Supreme Court has described vexatious behavior as conduct with the

---

[18](...continued)
§2503(7) does mean that none of the three (3) determinations was not "essential to the decision." This is so for two (2) reasons:

First,

[a] determination is essential to a judgment when the issue is actually recognized by the parties as important and by the trier of fact as necessary to the first judgment . . . ." J. Dvorske, 10 Standard Pennsylvania Practice 2d § 65:100 (2007). Determinations are not essential to the judgment . . .• if they have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made. Restatement (Second) of Judgments § 27, cmt. h (2007).

Jacobs, 381 B.R. at 162. Thus, if the prior court's findings "were woven into the fabric of the court's analysis," they do not have the characteristics of dicta and therefore, were essential to the judgment. Id. Based on my review of the C.P. Court Opinion, I find that to be the case here.

Second, the C.P. Court's findings and conclusions that the Debtor's conduct was "willful," "obdurate" and "vexatious" may be characterized fairly as alternative holdings. I have previously predicted that, when faced with the question, the Pennsylvania Supreme Court will hold that "a prior court's alternative holding is 'essential' to its decision and entitled to collateral estoppel effect in a later proceeding." Weidner, 476 B.R. at 889.

16

"sole purpose of causing annoyance." Thunberg, 682 A.2d at 299; accord Berg v. Georgetown

Builders, Inc., 822 A.2d 810, 816 (Pa. Super. Ct. 2003); Chervenak, Keane & Co. (C.K.C.

Associates) v. Hotel Rittenhouse Associates, Inc., 477 A.2d 487, 490 (Pa. Super. Ct. 1984).

Vexatious conduct also has been found when parties have pursued claims in the face of settled

law or in contravention of clear court rulings that their claim had no merit. Berg, 822 A.2d at

816.[19]

---

[19]       The term "vexatious" in §2503 has an added dimension because it is referenced in both
subsection (7), which addresses conduct occurring "during the pendency a matter" and subsection (9).
Subsection (9) provides for an award of sanctions "because the conduct of another party in commencing
the matter or otherwise was arbitrary, vexatious or in bad faith." Thus, subsection (9) addresses conduct
in "commencing [a] matter." See Sternlicht v. Sternlicht, 822 A.2d 732, 741 (Pa Super 2003) aff'd, 583
Pa. 149, 876 A.2d 904 (2005). Under subsection (9), the Pennsylvania Supreme Court has described
vexatiousness as bringing a lawsuit "without sufficient grounds in either law or in fact and if the suit
served the sole purpose of causing annoyance." Thunberg, 682 A.2d at 299; accord Berg., 822 A.2d at
816; Chervenak, 477 A.2d at 490.

          There is a striking textual distinction between §2503(7) and §2503(9). Section 2503(7)
supplements the term "vexatious" with the alternative terms "dilatory" and "obdurate," while §2503(9)
offers "arbitrary" and "bad faith" as alternative grounds for relief. These differences are puzzling. Was
the omission of "bad faith" as a ground for relief in §2503(7), and the use of the (perhaps milder) terms
"dilatory" and "obdurate" intended to set a slightly lower threshold for granting attorney's fees in
subsection (7) as compared to subsection (9)?

          One might also ask: what is the difference between "vexatious" and "bad faith" conduct?
The Pennsylvania Supreme Court has described "bad faith" in broad terms, stating  that a suit is filed in
"bad faith" if it was done for "purposes of fraud, dishonesty, or corruption." Thunberg, 682 A.2d at 299.
Is bad faith a higher standard than vexatiousness?  Or, is all vexatious conduct merely one kind of  bad
faith  –  a subset, if you will  –  making the term "vexatious" surplusage in §2503(9))?

          My research has not located any reported Pennsylvania decisions that attempt to answer
these questions.  Instead, in a number of cases, the courts have discussed subsections (7) and (9) without
drawing any distinction between the subsections, other than observing that one (1) subsection governs the
initiation of the lawsuit and the other involves conduct during the pendency of the lawsuit.  See, e.g.,
Wood v. City of Philadelphia, 2014 WL 1004119, at *4 (Pa. Cmwlth. Ct. Mar. 13, 2014); In re Barnes
Foundation, 74 A.3d 129, 135 (Pa. Super. Ct. 2013);Elfman, 2001 WL 1807940, at *11-12; Liscio, 638
A.2d at 1021; Brenckle v. Arblaster, 466 A.2d 1075, 1078 (Pa. Super. Ct. 1983).

          To decide the matter before me, I need not delve further into these questions.

**3.**

Under 11 U.S.C. §523(a)(6), "actions taken for the specific purpose of causing an injury as well as actions that have a substantial certainty of producing injury are 'willful' within the meaning of §523(a)(6)." Coley, 433 B.R. at 497 (citing Conte, 33 F.3d at 307–09). The debtor's scienter is critical in making the determination of willfulness. In this Circuit, the consensus among the bankruptcy courts is that a debtor must be subjectively aware that his or her actions are substantially certain to cause a injury to satisfy this standard. See In re Gotwald, 488 B.R. 854, 865-66 (Bankr. E.D. Pa. 2013) (collecting cases). From a plaintiff's perspective, the subjective standard (i.e., was the debtor aware or at least wilfully blind to the substantial certainty of the harm resulting from his or her wrongful conduct) likely is more "rigorous" than the objective standard (i.e., whether a reasonable person would know that the conduct is substantially certain to cause injury). In this proceeding, I will employ the subjective standard.[20]

In light of judicial definitions of the §2503(7) terms "dilatory" and "obdurate," see Part V.B.2., supra, it is questionable whether, as a matter of law, a sanction imposed for dilatory or obdurate behavior is a debt for willful and malicious injury under 11 U.S.C. §523(a)(6). Perhaps so, but I need not decide the issue because a sanction for vexatious behavior, i.e., behavior whose purpose was to cause annoyance is entirely consonant with the scienter standard of §523(a)(6). See In re Conner, 302 B.R. 509 (Bankr. W.D. Pa. 2003) (ruling on summary judgment that finding of "vexatious" conduct under section 2503(6) met standard under §523(a)(6)); see also In re Schermer, 388 B.R. 123 (Bankr. E.D. Pa. 2008) (ruling that complaint states claim under

---

[20]        The record supports a finding of willful and malicious injury under the more rigorous, subjective standard, making it unnecessary to choose between the standards. See Gotwald, 488 B.R. at 866 n.15.

§523(a)(6) based on underlying state court award pursuant to §§2503(7) & (9)).

Consequently, I conclude that the C.P. Court's determination that the Debtor's conduct was vexatious under 42 Pa. C.S. §2503(7) establishes that the debt is for a willful and malicious injury and therefore, nondischargeable under 11 U.S.C. §523(a)(6) .

## B.  The Inductive Approach

### 1.

Alternatively, I also conclude that, if I drill down to the next level of the summary judgment record, and examine the historical facts upon which the C.P. Court based its decision, those facts – which may not be relitigated[21] – establish as a matter of law that the subject debt is for a willful and malicious injury under 11 U.S.C. §523(a)(6).  In other words, based on those historical facts, no reasonable factfinder could conclude anything other than that the Debtor deliberately, wrongfully and subjectively knew that her conduct would injure J&V.[22]

----

[21]        The use of preclusion in this manner is appropriate because even if the ultimate issue in the state court litigation  –  whether the Debtor's conduct was dilatory, obdurate or vexatious conduct (within the meaning of 42 Pa. C.S. §2503(7)  –  is not the same issue as whether the Debtor's conduct was willful and malicious under 11 U.S.C. §523(a)(6), the issues of fact in the two (2) proceedings are the same.  In short, J&V should not have to relitigate all the facts it proved in the prior litigation and that were essential to the C.P. Court's decision.  The question then is whether those facts establish liability under §523(a)(6) as a matter of law.

[22]        As stated earlier, the moving party is entitled to judgment as a matter of law if the court finds that the motion alleges facts which, if proven at trial, would require a directed verdict in favor of the movant.  Fitzpatrick, 2 F.3d at 1115.  The standard for a directed verdict is whether there is evidence upon which the jury might reasonably find a verdict for the party against whom the motion is filed. 9B Federal Practice & Procedure §2524; see also Feldman v. Phila. Hous. Auth., 43 F.3d 823, 828 (3d Cir. 1994) (court must evaluate motion for directed verdict by viewing the evidence in the light most favorable to the nonmoving party and deciding whether there is evidence reasonably tending to support

(continued...)

The C.P. Opinion contains fifty-seven (57) findings of fact and fourteen (14) conclusions of law.  As stated earlier, it is peppered with comments making it clear that the court concluded that both the Debtor and her counsel engaged in reprehensible conduct during the pendency of the C.P. Litigation, necessitating an award under 42 Pa. C.S.A. §2503(7).

It is unnecessary to recapitulate the C.P. Court's entire, lengthy analysis.  By highlighting the most relevant and fundamental findings employed by the court to anchor its conclusions, I can determine that there are no material issues of fact and that J&V is entitled to judgment as a matter of law.

## 2.

Overall, the C.P. Court found that the Debtor's litigation strategy was "self-serving."  She relied "on facts that had little connection with reality and upon self-created 'law' that was unsupportive and irrelevant to the issues at hand  . . . ."  (Id. at 355 n.6).

Six (6) aspects of the ligation are highly illustrative.

First, the Debtor asserted a specious counterclaim on behalf of Mr. Malloy for an "under the table commission" of approximately $7,200.00.  (Id. at 353).   She based this counterclaim on Mr. Malloy's e-mail to Mr. Bucci advising of the Debtor's interest in the property, i.e., for Mr. Malloy's efforts in putting the deal together.  (Id. at 352).  The C.P. Court considered it likely that such a commission was "illegal" insofar as Mr. Malloy was not a licensed real estate broker. (Id. at 360).  Yet, the Debtor and Mr. Malloy persisted with the counterclaim, "based upon the

---

[22](...continued)
his position).  Here, I conclude that the preclusive facts would not support a verdict in the Debtor's favor on the issues of willfulness and malice.  Accord Kates, 485 B.R. at 110 n.27.

irrational belief that a licensed attorney can act as a real estate broker without obtaining a real

estate license, Mr. Malloy's having expired some time ago." (Id. at 361).

More egregious was the Debtor's relentless attack against J&V's counsel for "daring to

submit legal arguments in opposition to [her] case authorities and position" regarding her

counterclaim. (Id.) At one point, the Debtor threatened to bring J&Vs counsel before the

Pennsylvania Attorney Disciplinary Board for raising entirely appropriate legal issues, such as

the Debtor's standing to assert a counterclaim on behalf of her attorney. (Id. at 352-353).

Third, the Debtor pressed a "self-serving" interpretation of the AOS as to the underlying

mortgage requirement that she allegedly breached. She (and Mr. Malloy) persisted that the AOS

and the law did not require her to submit a completed mortgage application, but rather, merely

show a "good faith effort to obtain a mortgage," despite any such language in the AOS.

The C.P. Court explained:

> The Defendant and Mr. Malloy have repeatedly bombarded this litigation
> process with irrelevant contentions that the [Debtor] could have shown up
> at Settlement and paid cash for the premises, along with a barrage of
> paperwork, some of which was undertaken months before the [Debtor]
> ever met Mr. Bucci and was unrelated to this transaction altogether, all of
> which was designed to meet an utterly imaginary burden of showing that
> she made "a good faith effort" to acquire a mortgage. The facts are that
> the Defendant admittedly did not attend the Settlement, having deemed the
> requirement to have been "invalid", and did not timely submit the name of
> the requisite mortgage lender to Mr. Bucci within ten days of executing the
> [AOS]. It is important to stress these facts because they figure so
> prominently in the Defendant's and Mr. Malloy's delusional impression
> that Judge Kenney decided the case against them wrongly when he
> rejected their argument . . . .

(Id. at 355) (internal citations omitted).

Fourth, the Debtor contended that there was no breach of the AOS by virtue of the fact

that there was a second inspection of the premises on September 5, 2007, during which time the

Debtor asserted that Mr. Malloy was physically assaulted.  The C.P. Court characterized this

contention as a "fable" that was "constructed from apparent whole cloth" and "emblematic of the

bad faith that characterized the entire course of [their] conduct during the pendency of this

litigation."[23]  (Id. at 358).

Fifth, the C.P. Court found that the Debtor and Mr. Malloy "shamelessly and blatantly"

ignored admonitions from the court that their conduct could subject them to sanctions under 42

Pa. C.S. §2503.  (Id. at 363).

Finally, even after J&V prevailed after the lengthy trial, the Debtor threatened to file what

can only be characterized as an obviously baseless Dragonetti action against the Plaintiff for the

C.P. Litigation.  (Id. at 361).[24]

---

[23]     The Debtor and Mr. Malloy continued to aver that this "second" inspection of the
property (and accompanying assault) occurred during their litigation of the Fee Petition.  The C.P. Court
noted that the Debtor, "unrepentant" of the fact that the evidence she and Mr. Malloy proffered failed to
result a favorable verdict, forgot her trial testimony that she had admittedly lied (or misrepresented the
truth) when telling Mr. Bucci that she did not want the property for "personal reasons" on September 6 or
7, 2007.  (Id. at 359 n.8).


[24]     The term "Dragonetti" is commonly used to refer to an action for wrongful use of civil
proceedings under 42 Pa. C.S. §8351(a).  To succeed on a Dragonetti claim, a plaintiff must prove that
the opposing party acted in a grossly negligent manner or without probable cause and primarily for an
improper purpose in pursuing the allegedly  wrongful legal proceedings.  It also requires that prior
proceedings terminated in favor of the Dragonetti plaintiff.  So here, the losing party threatened the
winner with a Dragonetti claim.

22

**3.**

In describing the costs and fees warranted under §2503(7), the C.P. Court drew a bright

line with the date of July 28, 2009.  (Id. at 370).  The court demarcated that date as the point of

no return; the date after which the Debtor's and Mr. Malloy's conduct turned the corner from the

normal, expected posturing of civil litigation and entered the zone of sanctionable conduct under

§2503(7).  The court concluded that, as of July 28, 2009, "it should have been clear beyond cavil

to the [Debtor] and Mr. Malloy that there no longer existed a reasonable factual and legal basis

for continuing with this litigation."  (Id. at 379).  This was the date of the Debtor's deposition,

after which, the C.P. Court concluded it should have been obvious that the Debtor's claims and

defenses lacked merit.

Starting with the events after July 28, 2009, the C.P. Court calculated the Fee Award

based the time, effort and expense  incurred by J&V's counsel in :

- litigating the C.P. Court's order of September 30, 2009, dismissing 123 of 150 interrogatories served by the Debtor upon J&V.[25]

- preparing for repeat appearances and questioning by Debtor of trial witnesses over the course of the eight (8) months needed to complete the trial

- hiring and paying substitute trial counsel as a result of the Debtor's subpoena, but never fulfilled threat, to require J&V's trial counsel to testify as a witness at the proceeding;

- litigating the Debtor's Motion to Appoint substitute trial counsel pro hac vice, later withdrawn, when the Debtor and Mr. Malloy were advised by the court that the rules required a fee to do so;

---

[25]     The Interrogatories included questions such as: "if you lose your action, please provide one reason [the Debtor] should not sue you and your attorneys?" and "why are you not returning [the Debtor's] money as you promised you would?"

- refuting the Debtor's legal theories and evidence that were irrelevant to establish a defense to J&V's action for breach of the AOS;

- litigating the Debtor's interlocutory appeal without permission from Judge Kenney's denial of her oral Motion for Nonsuit and/or Directed Verdict at the close of the J&V's evidence (later dismissed <u>sua sponte</u> by the Pennsylvania Superior Court).

(<u>Id.</u> at 371).

**4.**

After reviewing the findings of the C.P. Court, I have no difficulty concluding, as a matter of law, that the Debtor's conduct giving rise to the Fee Award was willful and malicious within the meaning of 11 U.S.C. §523(a)(6).  The record establishes that the Debtor must have subjectively aware that her wrongful conduct would cause tortious injury to J&V.  Summary judgment is appropriate because no reasonable factfinder could find otherwise.

**V.  CONCLUSION**

For the reasons set forth above, J&V met its evidentiary burden of establishing that there are no material issues of fact and that, as a matter of law, the Fee Award is a debt for willful and malicious injury that is nondischargeable under 11 U.S.C. §523(a)(6).

An appropriate order will be entered.

Date: <u>**August 10, 2015**</u>

**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**

24